UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

KENNETH WILLIAMS,                           )
          Plaintiff,                    )
                              )
     vs.                                   )          1:06-cv-1136- SEB-TAB
                              )
RELIASTAR LIFE INSURANCE COMPANY, )
          Defendant.                    )

## REPORT AND RECOMMENDATION
## ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**I. Introduction.**

Plaintiff Kenneth Williams worked as a quality control manager for the Rogers Group from May 21, 2001, until June 28, 2002. Plaintiff was approved for short term disability from June 29, 2002, until December 31, 2002, by Defendant Reliastar Life Insurance Company ("Reliastar"), the provider of Plaintiff's ERISA-governed employee welfare benefit plan for disability insurance. Plaintiff applied for long term disability benefits with Reliastar but was denied.

Plaintiff claims that Defendant wrongfully denied him long term disability benefits in violation of ERISA and that it breached its fiduciary duties in violation of 29 U.S.C. § 1104. Defendant has moved for summary judgment. [Docket No. 26.] Plaintiff did not file a formal cross summary judgment motion but likewise requested in his response that the Court order Defendant to pay Plaintiff under the RS Plan. [Docket No. 34 at 12.] Plaintiff also largely agreed with Defendant's statement of the facts.[1] [Docket No. 34 at 1, 12.]

_____

[1] Plaintiff "agrees with a large majority of the factual assertions made by the Defendant in [its] Memorandum of Law in support of Defendant's Motion for Summary Judgment," but disagrees "to the extent that the facts contained [in Plaintiff's response] dispute such assertions."

**II.  Standard of Review.**

"Summary judgment is proper when the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"  *Mote v. AETNA Life Ins. Co.*, 502 F.3d 601, 606 (7th Cir. 2007) (quoting *Tegtmeier v. Midwest Operating Eng'rs Pension Trust Fund*, 390 F.3d 1040, 1045 (7th Cir. 2004) and Federal Rule of Civil Procedure 56(c)).

The long term disability insurance policy ("the RS Plan") issued to Plaintiff gives Defendant "final discretionary authority to determine all questions of eligibility and status and to interpret and construe the terms of this policy(ies) of insurance."  [RS 596.][2]  To be eligible under this policy, Plaintiff must be insured on the date he became disabled and the condition causing disability must not be excluded from coverage; he must be insured on the date the benefit waiting period begins; and he must send written notice of his disability to Defendant. [RS 578.]   One of the policy exclusions is "[s]ickness or injury which is the result of a pre-existing condition."  [RS 582.]

The policy also provides that disability is either "residual disability" or "total disability."

_____

[Docket No. 34 at 1.]  The facts provided by Plaintiff are primarily in addition to and do not for the most part dispute Defendant's facts, but the parties disagree as to whether Plaintiff's additional facts are relevant.  For example, Plaintiff provides definitions of terms from the policy (i.e. "residual disability" and "subjective conditions") that Plaintiff argues require Defendant to pay benefits but Defendant asserts are not applicable to Plaintiff's situation.  Likewise, Plaintiff provides information regarding the opinions of Dr. Michael Kane, whose opinion was the basis for Plaintiff's award of Social Security benefits, [Docket No. 34 at 3-4], but whose opinion Defendant minimizes since this doctor did not begin treating Plaintiff until March of 2003. [Docket No. 38 at 6.]

[2] Reliastar's administrative record ("RS") is located at Docket No. 24.

Residual disability is defined as follows:

> ReliaStar Life's determination that a significant change in your physical or mental condition due to accidental injury or sickness has caused the following: During the benefit waiting period and the first 24 months of disability benefits, you are able to perform at least one of the essential duties of your regular occupation on a full-time or part-time basis but you are unable to perform all of the essential duties of your regular occupation on a full-time basis and as a result you are unable to earn more than 70% of your basic monthly earnings.

[RS 589-90.]  Total disability is defined as follows: "[Y]ou are unable to do all of the essential duties of any gainful occupation and as a result you are not working at all."  [RS 590.]  The RS Plan limits benefits to twenty-four months if disability is due in whole or in part to subjective conditions, which are "conditions . . . based on self-reported symptoms and are not verifiable using objective medical tests and procedures."  [RS 583, 593.]  Plaintiff's insurance stopped the "date [he was] no longer actively at work for the Policyholder.[3]"  [RS 577.]

Because the policy gives Defendant "final discretionary authority to determine all questions of eligibility and status and to interpret and construe the terms of this policy of insurance," [RS 596], the administrator's decision that Plaintiff is not disabled is reviewed under the arbitrary and capricious standard and will be overturned "only . . . if it is 'downright unreasonable.'"  *Williams v. Aetna Life Ins. Co.*, No. 06-3824, 2007 WL 3230408, at *4 (7th Cir. Nov. 1, 2007); *Mote*, 502 F.3d at 606.  The Court is not to "substitute the conclusion it would have reached for the decision of the administrator, as long as the administrator makes an informed judgment and articulates an explanation for it that is satisfactory in light of the relevant facts."  *Mote*, 502 F.3d at 606.  This deferential standard "is 'a sliding scale' that requires that judicial review be 'more penetrating the greater is the suspicion of partiality, less penetrating the

---

[3] The policyholder is Rogers Group, Inc.  [RS 574.]

smaller that suspicion is." *Manny v. Cent. States, Southeast & Southwest Areas Pension & Health & Welfare Funds*, 388 F.3d 241, 243 (7th Cir. 2004) (quoting *Van Boxel v. Journal Co. Employees' Pension Trust*, 836 F.2d 1048, 1052-53 (7th Cir. 1988)).

Plaintiff suggests Defendant has a conflict of interest warranting heightened judicial scrutiny.  [Docket No. 34 at 8.]  Plaintiff articulates that because the administrator is also the insurer of the plan, there is an inherent conflict of interest based on profit margins.  [Docket No. 34 at 8.]  Plaintiff contends this conflict of interest is evidenced "by the Defendant only seeking review of Williams' claim for benefits under the Plan after the medical documentation submitted by Williams in support of this disability was iron clad."  [Docket No. 34 at 9.]  Plaintiff also claims that it was arbitrary for Defendant to deem Plaintiff disabled for short term but not long term disability benefits.

The Seventh Circuit has made clear that it is unnecessary to use "a heightened standard of review solely because a corporation or insurer interprets its own plan to deny benefits," and likewise that "ERISA endorses the 'notion of a corporate officer who doubles as a plan administrator.'"  *Hess v. Reg-Ellen Mach. Tool Corp.*, 423 F.3d 653, 659 (7th Cir. 2005). Furthermore, Plaintiff has failed to substantiate his claim that Defendant only reviewed Plaintiff's claim for benefits under the Plan after the medical documentation was iron clad, or explain why this approach would create a conflict of interest.

The fact that Defendant paid Plaintiff short term disability benefits but denied Plaintiff's claim for long term benefits is not an inconsistency that warrants heightened scrutiny.  Paying short term benefits without expending the resources necessitated by the in-depth review associated with Plaintiff's claim for long term disability benefits seems a prudent use of business

resources, not cause for the Court to question Defendant's partiality.  Likewise, Defendant

persuasively points out that the definition of total disability is not the same for long term

disability as for short term disability, for which "total disability" is defined more narrowly in

terms of the claimant's "regular occupation" as opposed to the claimant being unable to perform

"any gainful occupation" under the long term disability policy.  [Docket No. 39, Ex. 1 at 10; RS

590.]  Plaintiff having failed to convincingly demonstrate partiality by the administrator, a more

"penetrating" review of the administrator's decision than is normally given under the arbitrary

and capricious standard is inappropriate.

## III.  Discussion.

Defendant requests summary judgment on Plaintiff's ERISA claim arguing that it

provided a full and fair review of Plaintiff's claim for long term disability, and that its decision

to deny benefits to Plaintiff was not arbitrary and capricious.  First, Defendant claims that it was

rational in concluding that some of Plaintiff's conditions were pre-existing and that therefore any

disability resulting from these conditions was not covered under the RS Plan.  [Docket No. 27 at

14.]  In general, this determination is not questioned by Plaintiff, who argues his disability is

based on lower back pain and his diagnosis of depressive disorder not otherwise specified, which

are not pre-existing conditions.  [Docket No. 34 at 3, 5.]  Defendant acknowledges that it did not

consider the depressive disorder in its disability determination arguing that, despite Dr. Kane's

diagnosis of Plaintiff's depression in 2003, Dr. Tiwari had previously noted on September 27,

2002, that Plaintiff's depression "is very well managed with the medications we are prescribing

him."  [RS 458.]

Defendant further argues that its decision to deny benefits based on Plaintiff's back

condition was fully supported by the record and was not arbitrary and capricious. Defendant contends it used reports generated by two outside, board-certified physicians, Dr. Johnson in March 2003 and Dr. Dowdle in February 2004, who reviewed the medical records and found no support for Plaintiff's claim of total disability. Defendant also notes that Plaintiff's doctors do not identify an accident or injury causing his disability, nor do they suggest he undergo surgery for his condition. Defendant argues that the subjective reports by Plaintiff of his pain are insufficient to overcome Defendant's proper exercise of discretion in determining whether Plaintiff is unable to perform any work. For these reasons, Defendant maintains it conducted a full and fair review of Plaintiff's disability claim, and that it was not arbitrary and capricious in its decision to deny Plaintiff benefits.

Plaintiff claims he is entitled to long term disability under the RS Plan for several reasons. First, Plaintiff questions the physician opinions on which Defendant based its decision to deny Plaintiff long term disability benefits. Dr. Johnson initially and Dr. Dowdle on appeal both reported to Defendant that Plaintiff was not totally disabled and need not be restricted in his daily living or work activities based on Plaintiff's medical records. [RS 80, 294.] Plaintiff argues that his treating physician, Dr. Kane, rendered him totally disabled due to lower back pain, diagnosing him with multiple disc herniations in his lower back, lumbar facet arthropathy, lumbar degenerative disc disease, and sacroiliac joint arthropathy. Accordingly, his doctor restricted his daily functions such that he "cannot lift, pull, push any object greater than five pounds, and is unable to work, sit, or stand for more than fifteen minutes before the onset of severe pain." [Docket No. 34 at 3; RS 181.] Additionally, Plaintiff points to other providers who have treated him for this same condition, including Dr. Weidenbener, Dr. Browser, Dr.

6

Tiwari, Dr. Brown, Dr. Rothstein, Dr. Nienaber, and Dr. Gettelfinger.

Defendant contends that it relied upon the opinion of Dr. Tiwari, who was Plaintiff's attending physician beginning in March of 2002, pointing to a form provided by Dr. Tiwari dated August 2, 2002, stating that Plaintiff could return to work within three to six months. [Docket No. 27, Exhibit I.]  Defendant argues that Dr. Kane did not even meet with Plaintiff until March of 2003 [RS 181], and that the opinion of any doctor treating Plaintiff after 2002 is minimally relevant at best to Plaintiff's condition between June and December of 2002. Defendant suggests that the restrictions Dr. Kane gave Plaintiff were based on Plaintiff's particular job, not any gainful employment generally.  [Docket No. 38 at 6.]

Plaintiff additionally argues that Defendant relied almost entirely on the opinion of Dr. Dowdle, and asserts that Dr. Dowdle's opinion lacks reliability.  Plaintiff points out that Dr. Dowdle "essentially relies on his belief that [Plaintiff's] subjective complaints are not corroborated by the objective evidence or lack thereof" but that Dr. Dowdle never examined Plaintiff.  [Docket No. 34 at 8.]  Plaintiff also points out that Dr. Dowdle only took twelve days to review more than 400 pages of medical records, and that he was "hand picked and paid by the Defendant and was provided records by the Defendant, which records [are] uncertain, but his report certainly only references a handful of such records."  [Docket No. 34 at 8.]  Plaintiff concludes that "[i]t was arbitrary to limit the review in this situation to . . . a select group of records."  [Docket No. 34 at 8.]

Defendant responds that Plaintiff fails to state what specific evidence is lacking from the file that was reviewed by Dr. Dowdle and that Plaintiff offers no support for the suggestion that twelve days was insufficient for Dr. Dowdle to review the file.  Defendant disputes that Dr.

Dowdle was hand-picked, explaining that Defendant had contacted EvaluMed, who contacted

Dr. Dowdle for an independent review.  [Docket No. 38 at 8.]  In support of this position,

Defendant provides two letters it sent to EvaluMed—one addressed to EvaluMed and one

addressed to Independent Medical Reviewer.  [RS 89-90.]  Defendant denies that Dr. Dowdle did

not fully review the record, pointing out that Defendant's letter to the Independent Medical

Reviewer specifically requested a review of all files on record.  [Docket No. 38 at 9; RS at 89.]

Defendant further denies that it relied almost exclusively on Dr. Dowdle's report, indicating that

the appeals committee reviewed all the records at its meeting held on March 4, 2004, before

making its decision.  [Docket No. 38 at 9; Docket No. 27, Ex. JJ.]  Finally, Defendant points out

that it is not required to interview or examine Plaintiff in order to conduct a full and fair review.

[Docket No. 38 at 8 (citing *Semien v. Life Ins. Co. of N. Am.*, 436 F.3d 805, 812 (7th Cir.

2006)).]

   "In order for a plan to have 'substantially complied' with the requirement that a claimant

receive a full and fair review, 'the administrator must weigh the evidence for and against [the

denial or termination of benefits], and within reasonable limits, the reasons for rejecting

evidence

must be articulated if there is to be meaningful appellate review.'"  *Williams v. Aetna Life Ins.

Co.*, No. 06-3824, slip op. at 12-13 (7th Cir. Nov. 1, 2007) (quoting *Hackett v. Xerox Corp.*, 315

F.3d 771, 775 (7th Cir. 2003) and *Halpin v. W.W. Grainger*, 962 F.2d 685, 695 (7th Cir. 1992)).

   The record indicates several reasons why Defendant was not arbitrary and capricious in

relying on the reports by Dr. Dowdle and Dr. Johnson, among other considerations, and in

minimizing the determination arrived at by Dr. Kane.  First, the administrator need not accord

special deference to the opinions of treating physicians, nor is a heightened burden placed on administrators when they reject the opinion of a treating physician. *The Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 831 (2003). Moreover, the time line suggests Defendant was reasonable in not deferring to Dr. Kane. In its initial denial, Defendant likely did not even have the medical records of Dr. Kane since Plaintiff first saw Dr. Kane just a few days before Defendant made its initial determination to deny long term disability. Likewise, Defendant's minimizing of Dr. Kane's opinion on appeal, when it did have his records, is understandable considering Dr. Kane did not begin treating Plaintiff until after the benefits waiting period had ended, decreasing the credibility of Dr. Kane's opinion for the relevant time period.[4]

   Plaintiff's allegations of Dr. Dowdle's lack of reliability are dubious. Plaintiff has not provided any substantive facts demonstrating that Dr. Dowdle is unreliable. Rather, Plaintiff has drawn loose inferences. *See McCarthy v. Kemper Life Ins. Cos.*, 924 F.2d 683, 687 (7th Cir. 1991) ("A party opposing summary judgment . . . must affirmatively set forth facts that show that there is a genuine issue of material fact."). Plaintiff has speculated that Dr. Dowdle only saw portions of the record, but has pointed to no evidence to contradict Defendant's letter sent to Dr. Dowdle asking for a review of "the medical evidence we have on file" [RS 89] and Dr. Dowdle's reply that he "completed a Medical Record Review in the case of Kenneth Williams"

---

   [4] Dr. Kane began treating Plaintiff March 10, 2003, [RS 181], and Defendant denied Plaintiff benefits by letter dated March 18, 2003, [RS 254-57]. Plaintiff's insurance ended the date Plaintiff was no longer actively at work for Rogers Group, Inc. [*see* RS 577], so either on June 28, 2002, or July 12, 2002 (the formal date of Plaintiff's termination), depending on how the policy is interpreted. The benefits waiting period began June 29, 2002, and lasted essentially through December of 2002. Thus, a doctor not treating Plaintiff until 2003 could not authoritatively speak about Plaintiff's condition during the benefits waiting period, which is the crucial time period under this policy since Plaintiff's insurance ended sometime in late June or early July.

[RS 80].  Plaintiff has speculated that Dr. Dowdle did not thoroughly review the record based on the fact that Dr. Dowdle had the record for only twelve days, but Plaintiff's conclusion does not clearly follow from this fact.  The fact that the view of Plaintiff's doctors conflicts with Defendant's doctors does not change the result under the arbitrary and capricious standard. *Dougherty v. Indiana Bell Telephone Co.*, 440 F.3d 910, 917-18 (7th Cir. 2006).  While Defendant certainly could have provided a more thorough explanation of the evidence in its letters of denial to Plaintiff [RS 24-26, 70-72, 254-57], the information it did provide sufficiently indicates that Defendant's reliance on Drs. Johnson and Dowdle rather than Dr. Kane in its disability determination was not arbitrary and capricious.

Next, Plaintiff argues that he qualifies for benefits under both the residual and total disability provisions of the RS Plan, but that Defendant has disregarded the residual disability provision.[5]  Defendant contends the residual disability provision, which applies where the claimant is "able to perform at least one of the essential duties of [the claimant's] regular occupation on a full-time or part-time basis," does not apply to Plaintiff because he stopped work altogether on June 28, 2002.

Defendant's interpretation of the policy denying Plaintiff benefits based on residual disability is not arbitrary and capricious.  The policy defines the residual disability provision by stating in part that the claimant is "able to perform at least one of the essential duties of [the

---

[5]  Defendant argues that Plaintiff failed to exhaust this argument.  "While a requirement to exhaust internal plan remedies is not specifically written into ERISA, courts have held that exhaustion is ordinarily a useful prelude to a lawsuit."  *Ames v. Am. Nat'l Can Co.*, 170 F.3d 751, 756 (7th Cir. 1999).  If Plaintiff did not raise this issue in the administrative appeals process, it is inappropriate for Plaintiff to raise it now.  Still, the Court need not determine whether Plaintiff exhausted this issue because, on the merits, this argument fails.

10

claimant's] regular occupation on a full-time or part-time basis." [RS 589.]  Defendant correctly

points out that Plaintiff stopped work altogether on June 28, 2002.  Thus, Defendant had no

grounds to believe that Plaintiff was able to perform one or more of his duties on a full-time or

part-time basis from that time forward.  In fact, Defendant paid Plaintiff short term disability

insurance from June until December of 2002, which suggests that, at least during that time,

Defendant believed Plaintiff was not able to perform any of the duties of his job.  Plaintiff seems

to disregard the requirement that he be able to perform one or more of his duties in some

capacity, concluding: "Under the definition of disability, [Plaintiff] would qualify for benefits

since he was unable to perform at least one of the essential duties of his regular occupation and

earn 70% of his monthly income."  [Docket No. 34 at 9-10.]  In his failure to correctly state the

RS Plan language, Plaintiff consequently also fails to provide facts to support the contention that

Plaintiff should qualify for benefits based on residual disability according to the terms of the

policy.

     Plaintiff further argues that Defendant's determination of denial is arbitrary because

"[n]one of the physicians retained by the Defendant address [Plaintiff's] subjective conditions in

and of themselves as disabling."  [Docket No. 34 at 10-11.]  The policy section entitled

"Limitation for Subjective Conditions" states: "When disability is due in whole or in part to

Subjective Conditions, Reliastar Life limits monthly income benefits to a maximum of 24

months while you are not in the hospital."  [RS 583.]  Defendant argues that Plaintiff did not

raise this argument during the administrative appeal, and that Plaintiff has consistently

maintained his disability can be supported objectively.  Defendant further argues that it

considered both the objective evidence and Plaintiff's self-reporting in its decision to deny

benefits, and that Plaintiff has provided no authority to support the proposition that subjective conditions alone can constitute total disability under the policy.

Again overlooking the exhaustion issue, Plaintiff's argument lacks merit.  While the "Limitations for Subjective Conditions" provision certainly implies that a disability determination can possibly be reached based solely upon subjective conditions, it certainly does not require such a determination.  Furthermore, while it is improper to deny a claimant benefits simply because the degree of pain he experiences cannot be objectively measured, it is not unreasonable for a plan to request objective and clinical evidence beyond just the statements of a doctor repeating a claimant's subjective complaints of pain. *Williams*, 2007 WL 3230408 at *5 (based on citations of *Hawkins v. First Union Corp. Long-Term Disability Plan*, 326 F.3d 914 (7th Cir. 2003) and *Pralutsky v. Metro. Life Ins. Co.*, 435 F.3d 833 (8th Cir. 2006)).

Plaintiff is asking that Defendant defer to the reports given by Plaintiff's treating doctor, Dr. Kane, who was unable to any provide clinical evidence during the benefit waiting period.[6] Furthermore, Plaintiff's complaint that the doctors Defendant hired considered only objective evidence, even if true, is not outcome determinative.  While Defendant must consider all documentation submitted by Plaintiff, the terms of the policy do not specify what weight, if any, should be given to subjective factors, thus leaving this area open to interpretation, the final discretionary authority of which is vested in Defendant.  Final authority for the disability determination is also vested in Defendant, not Defendant's doctors, and Defendant reported reviewing records provided by Drs. Nienaber, Weidenbener, Craig, Tiwari, Gettlefinger,

---

[6] The "benefit waiting period" is "the length of time [the claimant] must be continuously disabled before [he] qualif[ies] to receive any benefits.  [RS 578.]  Plaintiff's benefit waiting period is 180 days.  [RS 575.]

Bloomington Hospital, Prompt Care, and Osco Drugs.  [RS 254.]  Information pertaining to Plaintiff's subjective pain would presumably be contained within these reports, and thus considered by Defendant in its determination.  Even if Defendant overemphasized the objective evidence and under-emphasized the subjective evidence, its decision was not arbitrary.

Finally, Plaintiff argues that his award of Social Security disability benefits supports his conclusion that Defendant's decision to deny him long term disability benefits was arbitrary and capricious.  Plaintiff explains that, in comparing the definitions of disability under the RS Plan and per the Social Security Administration, it should be more difficult for Plaintiff to obtain Social Security benefits, which Plaintiff has done.  Defendant points out that the Social Security Administration award was not rendered at the time Defendant decided Plaintiff's appeal, and that it would be improper for the Court to look outside the administrative record and take judicial notice of the award by the Social Security Administration.  In support of this view, Defendant cites *Tegtmeier v. Midwest Operating Eng'rs Pension Trust Fund*, 390 F.3d 1040 (7th Cir. 2004), which states: "While Social Security decisions, if available, are instructive, these determinations are not dispositive . . . ."  *Id.* at 1046.  Defendant further argues that "the award is in part consistent with [Defendant's] decision: 'Dr. Hutson testified that, based upon the objective medical diagnostic test results and clinical findings, the claimant should be able to perform sedentary exertional work.'"  [Docket No. 38 at 6 (citing Docket No. 37, Ex 1 at 3).]

In February of 2005,[7] the Social Security Administration determined that Plaintiff was

_____

[7] Defendant notes that the Social Security Administration award is undated.  [Docket No. 38 at 5.]  The redacted version of this document appears to be undated.  [Docket No. 37, William's Ex. 1 at 5.]  The sealed version of this document faintly indicates a date of either February 12 or 17, but the year is unreadable.  [Docket No. 35, Ex. 1, at 6.]  Presumably, this award was given in 2005, right after the hearing was held in January of 2005.  [*See* Docket No.

disabled as of June 29, 2002, relying primarily on Plaintiff's treating physicians.  [Docket No.

37, William's Ex. 1 at 3.]  Unlike Social Security Administration determinations, in which more

weight is given to treating sources, *see* 20 C.F.R. 404.1527(d)(2), ERISA does not suggest that

plan administrators give special deference to treating physicians' opinions nor does it impose a

greater burden on administrators to explain when they reject the opinion of a treating physician.

*See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 831 (2003).  Likewise, the standard

used to determine disability is different for the Social Security Administration than that used for

the RS Plan.  *See id.* at 833 ("In determining entitlement to Social Security benefits, the

adjudicator measures the claimant's condition against a uniform set of federal criteria.  'The

validity of a claim to benefits under an ERISA plan,' on the other hand, 'is likely to turn,' in

large part, 'on the interpretation of terms in the plan at issue.'" (quoting *Firestone Tire & Rubber*

*Co. v. Bruch*, 489 U.S. 101, 115 (1989)).

      The RS Plan can reasonably be read to place on the claimant the obligation to show that

he is "unable to do all the essential duties of any gainful occupation and as a result [is] not

working at all."  [RS 590.]  In an assessment of disability by the Social Security Administration,

the claimant must show only that he is unable to do past relevant work, and then "the burden

shifts to the Social Security Administration to prove that in light of the claimant's age, education,

job experience and functional capacity to work, the claimant is capable of performing other work

and that such work exists in the national economy."  *Skinner v. Astrue*, 478 F.3d 836, 844 n.1

(7th Cir. 2007).  Thus, contrary to Plaintiff's claim that "the SSA's qualifying definition is

certainly more difficult to obtain," [Docket No. 34 at 10], it seems Plaintiff has a greater burden

---

37, William's Ex. 1 at 1.]

to prove disability under the RS Plan.  Given the reliance on Plaintiff's treating physicians by the ALJ for the favorable Social Security Administration decision, the support for Defendant's position by the expert testifying at Plaintiff's Social Security Administration hearing, and the different standards used in determining disability by the Social Security Administration and RS Plan, Defendant's decision to deny Plaintiff benefits was not arbitrary and capricious despite the Social Security Administration's decision to award benefits.

## IV.  Conclusion

The facts in this case are largely if not completely undisputed.  Defendant provided sufficient evidence that it conducted a full and fair review of Plaintiff's claim, and Plaintiff has offered no convincing facts or reasoning to support his contention that Defendant was arbitrary and capricious in its decision to deny Plaintiff benefits under the RS Plan.  Therefore, the Magistrate Judge recommends that Defendant's motion for summary judgment [Docket No. 26] be granted, and that judgment be entered in favor of the Defendant and against the Plaintiff.  To the extent Plaintiff requested relief in his summary judgment response [Docket No. 34], the Magistrate Judge recommends it be denied.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1), and failure to file timely objections within the ten days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Dated:  01/02/2008

Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

15

Copies to:

Sarah Jane Graziano
HENSLEY LEGAL GROUP
sgraziano@hensleylegal.com

William D. Hittler
HALLELAND LEWIS NILAN & JOHNSON
whittler@halleland.com

William Edwin Wendling Jr.
CAMPBELL KYLE PROFFITT LLP
wwendling@ckplaw.com